lml

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RALF MONDONEDO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 07-4059-JAR |
| SALLIE MAE, INC. ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Ralf Mondonedo, proceeding *pro se*, filed this action[1] alleging that defendant Sallie Mae, Inc. ("Sallie Mae") and SLM Financial Corporation ("SLM") violated various provisions of the Kansas Consumer Protection Act ("KCPA")[2] and the Fair Debt Collection Practices Act ("FDCPA")[3] in connection with plaintiff's student loans. The Court denied plaintiff's motion for summary judgment on his FDCPA claim and granted SLM's motion for summary judgment on the grounds that it is a separate legal entity from Sallie Mae.[4] Although Sallie Mae raised the threshold issue of whether it is a "debt collector" for purposes of the FDCPA in its response to plaintiff's motion, it did not file a cross-motion for summary judgment, leaving the Court unable to rule on the issue as a matter of law. The parties proceeded

---

[1] Defendant Sallie Mae removed the action from the District Court of Shawnee County, Kansas on May 17, 2007 (Doc. 1.)

[2] K.S.A. 50-601 et seq.

[3] 15 U.S.C. § 1692.

[4] (Doc. 54.)

to trial on plaintiff's KCPA and FDCPA claims on March 11, 2009.[5]  At the close of evidence in the trial, Sallie Mae filed a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a) on plaintiff's FDCPA claims (Doc. 74) and orally moved for judgment as a matter of law on plaintiff's KCPA deceptive practices claims.  After hearing arguments and considering Sallie Mae's submissions, the Court made oral findings of fact and conclusions of law.  For the reasons set forth in the record and as supplemented below, the Court grants Sallie Mae's motions.  The Court also enters judgment in favor of Sallie Mae on plaintiff's KCPA unconscionable practices claims.[6]

**I.    Standard**

Under Federal Rule of Civil Procedure 50(a), a court may grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[7]  A moving party "is entitled to a judgment if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[8]  "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could

---

[5]At the pretrial conference held March 9, 2009, the Court ruled that plaintiff had waived his common law tort claims for invasion of privacy and negligent supervision, as they were not included in the Pretrial Order (Doc. 45.)  The pretrial order is the controlling document for trial, Fed. R. Civ. P. 16(a), and plaintiff did not move to amend the Pretrial Order under Rule 16(e).

[6]At the March 9, 2009 conference, the parties agreed that the amount of civil penalties and whether plaintiff is a "disabled person" under K.S.A. § 50-676 and thus entitled to enhanced penalties is a question for the Court.  Because the Court enters judgment in favor of Sallie Mae on all of plaintiff's KCPA claims, it need not reach these issues.

[7]Fed. R. Civ. P. 50(a)(1).

[8]*Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quotations omitted).

properly find for that party."[9] In order for a jury to properly find for a party, "more than a scintilla of evidence" must be presented to support a claim.[10] When the moving party also carries the burden of proof, the motion "may be granted only where [the movant] has established his case by evidence that the jury would not be at liberty to disbelieve."[11] In considering a motion for judgment as a matter of law, the court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.[12] But the court must refrain from making credibility determinations and weighing the evidence.[13] "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[14]

## II.   Facts

The following facts are based on the evidence presented at trial and are viewed in the light most favorable to plaintiff.

Sallie Mae, Inc. is engaged in the business of processing and collecting private student loans in addition to purchasing, collecting and attempting to enforce debts.[15] Plaintiff Ralf

---

[9]*Herrera v. Lufkin Indus.,*474 F.3d 675, 685 (10th Cir. 2007).

[10]*Id.* (citing *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003)).

[11]*Black v. M&W Gear Co.*, 269 F.3d 1220, 1238–39 (10th Cir. 2001) (quotation omitted).

[12]*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *Deters*, 202 F.3d at 1268)).

[13]*Id.*

[14]*See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

[15](Trial Ex. 51.)

3

Mondonedo is the borrower under four "Lawloans" student loan agreements executed in June 2001 (Loan 1), March 2002 (Loan 2), April 2003 (Loan 4), and September 2003 (Loan 6),[16] which he used to attend law school and to take the bar examination.  Wells Fargo Bank was the lender on all four loans, which were serviced by Sallie Mae.  After attempting to collect on plaintiff's loans, Sallie Mae sent plaintiff notice that the loans would go into default.  Plaintiff has received collection notices from debt collectors attempting to collect the loans on behalf of Sallie Mae.

Plaintiff's sister, Betty Deatherage, is the co-borrower on three of his four loans; her husband, David Deatherage, is co-borrower on the fourth.  Deatherage initially testified that she was not the co-borrower on Loan 1, but admitted on cross-examination that although their mother was listed as the co-borrower on the loan application, she executed an addendum to the loan application and was approved as the co-borrower on Loan 1.  Deatherage testified that her problems with Sallie Mae began in 2005, when representatives began calling her and sending letters in an attempt to collect on plaintiff's student loans.  She further testified that when representatives of Sallie Mae told her that plaintiff's loans were delinquent, she did not believe them, so she did not make payments.  Deatherage testified that she was confused about the identity of her lender, but that she received notices of co-borrower statements from Sallie Mae summarizing the loans that it serviced and eventually made four payments to Sallie Mae in 2007.  Deatherage is not a plaintiff in this lawsuit.

Plaintiff also testified on his own behalf.  He testified that he received four deferments from Sallie Mae after he graduated law school.  Plaintiff testified that Sallie Mae began calling

---

[16](Trial Exs. 1-4.)

him to collect on the loans in 2005.  Plaintiff wanted to refinance with Sallie Mae, but testified that the notes did not match the information that he had.  He testified that he made numerous inquiries of Sallie Mae starting in 2005, with no success.  Plaintiff sent written inquiries to Sallie Mae in 2007, seeking verification of his original loan amounts and identity of his co-borrowers.  Plaintiff was not satisfied with Sallie Mae's responses, and sent a demand letter seeking information about his loans, which eventually led to plaintiff filing this lawsuit.  Plaintiff testified that he could not refinance his loans because he was confused as to the identity of his lender.  He testified that he was not disputing that he was obligated to repay the loans, but that he wanted correct information from Sallie Mae, including the original loan amounts and the identity of his co-borrowers.  On cross-examination, plaintiff admitted that prior to October 2007, Sallie Mae was the only entity he dealt with about his student loans and the only company that attempted to collect on the loans until after they were in default.  Plaintiff agreed the law school ultimately determined the loan amounts, which could be different than the amounts requested, and that Betty Deatherage was the co-borrower on Loan 1, per the addendum to the loan application.  Plaintiff testified that he did not inquire about the identity of his lender or question the interest rates or balances of his loans.

### III. Discussion

#### A. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses."[17]  The FDCPA does not "prohibit a debt collector from merely attempting to collect on a debt.  Nor are threats to take legal action or to report a debtor to credit agencies actionable, unless the action threatened cannot legally be taken, is not intended to be taken, or involves the communication of false information."[18]

To present a claim under the FDCPA, the claimant must show that the monetary obligation in dispute is a "debt" under the terms of the Act and that the entity collecting the debt is a "debt collector."[19]  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[20]

The Act, however, includes multiple exceptions to the term "debt collector," which place the entity outside the scope of and liability under the FDCPA.[21]  The District Court of Kansas has discussed the Congressional rationale for limiting the scope of the Act:

> Legislative history of the [FDCPA], indicates that the Congress intended to target

---

[17] *Davis v. United Student Aid Funds, Inc.*, 45 F. Supp. 2d 1104, 1107 (D. Kan. 1998) (quoting 15 U.S.C. § 1692(e)).

[18] *Whayne v. United States Dep't of Educ.*, 915 F. Supp. 1143, 1145 (D. Kan. 1996).

[19] *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 13-14 (D. Mass. 2004); *Dean v. Gillette*, No. 04-2100-JWL, 2005 WL 957043, at *3 n.3 (D. Kan. Apr. 25, 2005).

[20] 15 U.S.C. § 1692a(6).  In its ruling from the bench, the Court found that plaintiff had not shown that Sallie Mae is a "debt collector," and even if he had, it was excluded as a loan servicer that obtained the loan prior to default, pursuant to § 1692a(F)(iii).  The Court found that plaintiff had not shown that Sallie Mae regularly collected or attempted to collect debts owed or due or asserted to be owed or due another.  The Court clarifies that in so ruling, it did not mean to suggest that Sallie Mae does not collect debts as part of its servicing agreements with loan originators, but that plaintiff had not proved that Sallie Mae is a third-party or independent collector of delinquent loans as contemplated by the FDCPA.  That being said, the Court's ruling stands that Sallie Mae is not a debt collector under the Act, as explained in detail in the Court's oral ruling and in this Order.

[21] *Davis*, 45 F. Supp. 2d at 1108.

*third-party or independent collectors* of delinquent debts because unlike creditors, whose actions are often restrained by their desire to protect their good will, independent contractors will generally have no future contact with the consumer and are therefore likely to place less importance on the consumer's opinion of their debt collection tactics.[22]

Among other exceptions, the Act excludes from the definition of debt collector, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ."[23]  An entity that does not own the loan but merely "services" the loan is treated as a "creditor" and generally is not subjected to the FDCPA.[24]  Where the debt was assigned for servicing before default of the loan, the assignee is exempt from the Act because the assignee becomes a creditor and is collecting its own debt.[25]  "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."[26]  A servicing company is subject to the FDCPA if the loan was in default at the time the servicing company acquired the loan account.[27]

Under this so-called default exception, courts have consistently held that agencies such as Sallie Mae that are involved in the administration and servicing of student loans are not "debt

---

[22]*Alvano v. Am. Bank*, No. 89-2340-O, 1989 WL 156815, at *1 (D. Kan. Nov. 3, 1989) (emphasis in original) (citing *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1485-86 (M.D. Ala. 1987)).

[23]15 U.S.C. § 1692a(F)(iii).

[24]*See Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484, 487 (7th Cir. 2004) (citing *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998)).

[25]*See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996)

[26]*Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted).

[27]*F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173-74 (3d Cir. 2007).

7

collectors."[28] In applying this exception, "the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used."[29] Courts have noted that default "does not occur until well after a debt becomes outstanding."[30] Therefore, if Sallie Mae obtained plaintiff's student loans before his debt went into default, Sallie Mae is exempt from liability under the FDCPA.[31]

In this case, plaintiff's evidence shows that Sallie Mae has serviced each of his four student loans since its inception and thus, before the date any payments were due or the possibility of default existed. Plaintiff's four law student loan applications all show the original lender as Wells Fargo Bank, but also direct that the application be mailed to Sallie Mae.[32] Every

---

[28]*See Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004); *Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484, 487 (7th Cir. 2004) (nonprecedential disposition); *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 13-14 (D. Mass 2004); *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 56 (D. Mass. 1999) (applying the default exclusion to a student loan collection service); *Jones v. Intuition, Inc.*, 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998) (same)*; Martin v. Sallie Mae, Inc.*, Civil Action No. 5:07-cv-00123, 2007 WL 4305607, at *10 (S.D.W. Va. Dec. 7, 2007); *Seals v. Nat'l Student Loan Program*, No. Civ. A. 5:02 CV 101, 2004 WL 3314948, at *5 (N.D.W. Va. Aug. 16, 2004), *aff'd*, 124 F. App'x 182 (4th Cir. 2005). Plaintiff has not cited, nor did the Court's research reveal any case in which Sallie Mae was found to be a debt collector under the FDCPA.

[29]*Albrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003).

[30]*Id.* at 87. In dealing with claims under the FDCPA, district courts frequently distinguish between a debt that is "delinquent" and one that is in "default." *Id.* at 86. Most courts, in addressing student loan collection under the FDCPA, import the definition of "delinquent" provided in the federal regulations for the Federal Family Education Loan Program (FFELP). *Id.* at 87. Under the FFELP, a payment is delinquent "on the first day after the due date of the first missed payment that is not later made." *Seals v. Nat'l Student Loan Program*, No. Civ. A. 5:02 CV 101, 2004 WL 3314948, at *5 n.2 (N.D.W. Va. Aug. 16, 2004) (quoting 34 C.F.R. § 682.411(b)(1) (1999)). Although courts do not agree as to how much time must lapse before a debt goes into default, most courts agree that a certain period must pass before a delinquent debt ripens into a default. *Alibrandi*, 333 F.3d at 87. As a result of this distinction, the court in *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47 (D. Mass. 1999), held that "a company servicing a federal student loan is exempt from the definition of 'debt collector' [under the FDCPA] when it acquires the loan for servicing after the borrower becomes 'delinquent' . . . but before the borrower is officially in 'default.'" *Seals*, 2004 WL 3314948, at *5.

[31]*Seals,* 2004 WL 3314948, at *5. Although the FDCPA does not include a definition of "obtained," the Federal Trade Commission has commented on the FDCPA, stating "debts not in default when obtained" applies to parties "such as mortgage service companies whose business is servicing current accounts." *See* FTC Statements of General Policy of Interpretation, Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50103 (Dec. 13, 1988).

[32](Trial. Exs. 1-4.)

8

other document introduced by plaintiff bears the name of Sallie Mae, including the co-borrower addendum dated May 5, 2003.[33] The annual co-borrower debt level statements sent to Betty and David Deatherage dated June 19, 2004 and June 17, 2005, list the loans for which they are co-borrowers and clearly state that "[t]hese loans represent only those serviced by Sallie Mae Servicing."[34]

Plaintiff testified that his loans were due six months after he graduated law school in May 2003, that he received four deferments on his loans, and that no payment was due until December 2006. On May 9, 2006, Sallie Mae notified plaintiff of his payoff amounts on three of his loans, directing him to send payment to Sallie Mae.[35] On March 2 and April 5, 2007, in response to plaintiff's inquiry, Sallie Mae provided plaintiff with a summary of the four loans serviced by Sallie Mae, the co-signor, the original amount, the outstanding principal and the interest rate.[36] Sallie Mae sent plaintiff notices of the delinquency of his loans on May 8 and October 10, 2007, informing him that one or more of his loans was delinquent and if he did not bring the loan(s) current, they would inform the national credit bureaus of his delinquency.[37] Sallie Mae sent demand letters to plaintiff on September 9 and November 8, 2007, informing him that his loans would go into default on October 9 and December 8, 2007, respectively.[38] Thus, the evidence is clear that Sallie Mae obtained plaintiff's loans for servicing long before his

---

[33](Trial Ex. 15.)

[34](Trial Exs. 19-22.)

[35](Trial Ex. 6.)

[36](Trial Exs. 5, 15.)

[37](Trial Exs. 31, 32.)

[38](Trial Exs. 34, 35.)

loans went into default.

Moreover, the evidence demonstrates that Sallie Mae was the only entity that plaintiff or Betty Deatherage dealt with throughout the life of his loans, prior to their default. The only document in evidence from Wells Fargo is a letter sending Deatherage the co-borrower application form that she requested.[39] All other documents and contact were with Sallie Mae, including the four payments the Deatherages made in 2007.[40] Deatherage testified that her problems with Sallie Mae began in 2005, when representatives began calling her and sending letters attempting to collect on the loans. Deatherage testified that at all times, she owed money to Sallie Mae. Likewise, although there is no evidence that plaintiff ever made a payment to Sallie Mae on any of his four loans, all documents in evidence are from Sallie Mae.

Despite his own evidence offered at trial, plaintiff continues to argue that Sallie Mae is a third-party debt collector subject to the FDCPA. Plaintiff asserts that there is no evidence that Sallie Mae purchased the loans or that the loans were not in default. This argument is belied by the documents stating that Sallie Mae was the loan servicer as late as 2004, nearly three years before the loans were delinquent and subsequently at risk for default, as set forth in detail above. Moreover, as the case law explains, for purposes of the FDCPA, a servicer of a loan "obtains" the loans for purposes of the exception when it is assigned for servicing; ownership is not the issue.[41]

Plaintiff further contends that the evidence shows that Sallie Mae is a collection agency

---

[39](Trial Ex. 18.)

[40](Trial Exs. 23-26.)

[41]*See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996).

and was asking for payment on behalf of Wells Fargo and SLM, citing documents sent by Sallie Mae that plaintiff argues direct him to make payments to those parties. The documents to which plaintiff refers, however, are statements of accrued interest sent by Sallie Mae from January 2001 through January 2004, before any of the loans became due.[42] These notices clearly state that plaintiff is not required to pay the interest and that any payment is voluntary and will lower the total amount he will have to pay over the life of his loans, and are not efforts by Sallie Mae to collect a debt owed to or asserted to be owed to Wells Fargo or SLM. By contrast, after the loans were in default, Sallie Mae referred the loans for collection to Pioneer Credit Recovery, Inc., and OSI Education Services, Inc.[43] These entities are clearly third party debt collectors as contemplated by the FDCPA—their notices plainly state that plaintiff's past due account has been referred to them for collection and that the notices were an attempt to collect a debt on behalf of Sallie Mae. Because these collection agencies obtained their interest in plaintiff's loans after default, they are subject to the terms of the FDCPA as a "debt collector."

The evidence is clear that Sallie Mae is a loan servicer who obtained the loans originated by Wells Fargo for servicing prior to default and is exempt from liability under the FDCPA. Accordingly, Sallie Mae is entitled to judgment as a matter of law on plaintiff's FDCPA claim.

**B.     KCPA**

**1.     Deceptive Acts and Practices**

Plaintiff asserts three claims of deceptive acts and practices against Sallie Mae: 1) willful

---

[42](Trial Exs. 7, 9, 10, 11, 12.)

[43](Trial Exs. 48, 49.)  A third collection agency, NCO Financial Systems, Inc. stated in its notice that it was formerly known as OSI Education Services, Inc. (Trial Ex. 50.)

11

misrepresentation of a material fact;[44] 2) willfully failing to state, concealing, suppressing or omitting a material fact;[45] and 3) making false representations regarding consumer rights, remedies or obligations.[46] The Court finds that plaintiff has failed to offer any evidence of deceptive acts or practices, specifically, that he was mislead, deceived or injured in any way by Sallie Mae.

Plaintiff's allegations center around his purported confusion concerning the loan documents. Plaintiff testified that he did not know the identity of his lender or his co-borrowers and that Sallie Mae repeatedly sent him the same documents in response to his inquiries without any explanation or answer to his concerns. Although plaintiff claims to have requested information from Sallie Mae as early as 2005, the first evidence of any request for information in writing is a letter to Sallie Mae dated January 25, 2007.[47] In that letter, plaintiff writes to Sallie Mae in reference to his loans with Sallie Mae. Plaintiff enclosed copies of the promissory notes and asks Sallie Mae to verify the notes, advise on the original amount of each loan and which loans are guaranteed by a co-signor. Plaintiff attached "sticky notes" to the enclosed notes, with comments indicating that he was aware that he did not always receive the amount requested, as the law school determined the amount of the loan actually disbursed. The notes also indicated

---

[44]K.S.A. § 50-626(b)(2). To prove this claim, a plaintiff must show that he was a consumer, that defendant was a supplier, and that defendant willfully represented to plaintiff, orally or in writing, a specific representation that was an exaggeration, falsehood, innuendo or ambiguity of a material fact. Kan. PIK Civil 4th, § 129.03.

[45]*Id*. § 50-626(b)(3). To prove this claim, a plaintiff must show that he was a consumer, that defendant was a supplier, and that defendant willfully failed to state, concealed, suppressed, or omitted a specific material fact. Kan. PIK Civil 4th § 129.04.

[46]*Id*. § 50-626(b)(8). To prove this claim, a plaintiff must show that he was a consumer, defendant was a supplier, and that defendant represented to plaintiff a specific representation relating to consumer rights, remedies or obligations that was false. Kan. PIK Civil 4th § 129.07.

[47](Trial Ex. 488.)

that he was trying to refinance with Sallie Mae. An identical letter was sent to Sallie Mae on February 17, 2007.[48] Sallie Mae responded to plaintiff's inquiry on March 2, 2007, indicating that it had researched his concerns, specifically the co-signors listed on his account.[49] Sallie Mae provided a chart summary listing the four loans serviced by Sallie Mae, the disbursement date, the co-signor, the original principal, the outstanding principal and the interest rate. Betty Deatherage was listed as co-signor on Loans 1, 2 and 4, and David Deatherage was listed as co-signor on Loan 6.

On March 30, 2007, plaintiff sent Sallie Mae a demand letter, stating that he had requested for over a year that Sallie Mae provide him with detailed and specific information about his loans with Sallie Mae.[50] Plaintiff alleged that Sallie Mae had failed to provide him with the following information: 1) the exact number of loans; 2) the name of each co-signor for each loan; 3) the original amount borrowed for each of the loans; and 4) any document in Sallie Mae's possession that changes the terms or the amounts of the original loans. On April 5, 2007, Sallie Mae responded to plaintiff's request for clarification, once again providing the same summary of the loans it services included in its March 2, 2007 correspondence.[51] Sallie Mae explained that the co-signor listed on Loan 1 was originally requested with Betty Mondonedo, plaintiff's mother, but since the loan could not be approved with her as co-signor, an addendum was received that reflected Betty Sasser (Deatherage) as the co-signor, which was approved.

---

[48](Trial Ex. 14.)

[49](Tr. Ex. 5.)

[50](Trial Ex. 17.)

[51](Trial Ex. 15.)

Sallie Mae enclosed all copies of the promissory notes and the addendum, which verify the co-signors as correct, with no adjustment needed.  Sallie Mae then explained in detail what happens when a borrower fails to make loan payments, and that Sallie Mae performs a progression of activities to collect delinquent payments called "due diligence."  Specifically, Sallie Mae explained that it sends letters and makes telephone calls at predetermined intervals, which become more urgent and will not stop until the delinquency is resolved.  As the delinquency worsens, borrowers are reported to the national credit bureaus.  Due diligence also applies to co-signors since they have the same responsibilities as the borrower.  Plaintiff subsequently filed this lawsuit on April 16, 2007.

There is no evidence that any of the information provided by Sallie Mae was deceptive, misleading or false.  Sallie Mae provided plaintiff with all of the information he requested regarding his loans and the co-signors.  Plaintiff never requested information about the identity of his lender or why his loan amounts kept increasing, nor did he dispute the amounts of the loans or the interest rates.  Certainly, plaintiff knew who to contact when he sought four deferrals and when he wanted information about his loans.  Plaintiff sent courtesy copies of his demand letter to several organizations, including the Kansas Attorney General, but not Wells Fargo.  Correspondence from Sallie Mae throughout the life of plaintiff's loans, both before and in response to his inquiries, set forth the original loan amounts along with accrued interest.  The fact that plaintiff may not understand the concept of compound interest does not equate to deceptive acts or practices under the KCPA.

While Betty Deatherage's testimony indicates that she may not have understood the information verified by Sallie Mae, she is not a plaintiff in this action.  There is no evidence that

plaintiff did not understand, however, nor is there evidence that he engaged in any conduct based on a representation of Sallie Mae, as there is no evidence that plaintiff ever made a payment to Sallie Mae. Accordingly, Sallie Mae is entitled to judgment as a matter of law on plaintiff's deceptive practices claims under the KCPA.

### 2. Unconscionable Acts

K.S.A. § 50-627 provides, and the parties agree, that the finding of unconscionability of an act or practice is a question for the court. The KCPA lists factors for the court to consider in determining whether an act or practice is unconscionable.[52] Plaintiff claims that Sallie Mae committed an unconscionable act or practice in that 1) Sallie Mae knew or had reason to know that it took advantage of plaintiff's inability to protect his interest because of ignorance of his rights in reference to the private loans,[53] and 2) Sallie Mae knew or had reason to know that it made misleading statements of opinion of which plaintiff was likely to rely to his detriment.[54]

The Court grants judgment in favor of Sallie Mae on plaintiff's claims of unconscionable practices. There is no evidence that Sallie Mae took advantage of plaintiff's inability to protect his interests—indeed, plaintiff's loans were to finance three years of law school and to take the bar examination. Nor is there any evidence that Sallie Mae made a misleading statement of opinion of which plaintiff was likely to rely to his detriment. Plaintiff's allegations that he did not understand who his lender was or why his loan balance kept increasing is belied by the documents introduced by plaintiff. Sallie Mae regularly summarized plaintiff's loans and

---

[52] K.S.A. § 50-627.

[53] *Id*. § 50-627(a), (b)(1).

[54] *Id*. § 50-627(b)(6).

balances, and when plaintiff inquired in writing about his co-signors and the original amounts of the loans, Sallie Mae responded in detail.  The evidence does not show that plaintiff inquired in writing about the identity of his lender or the interest rates.  Likewise, plaintiff does not provide any evidence of a misleading statement of opinion by Sallie Mae, which provided detailed factual responses to plaintiff's inquiries. Certainly, there is no evidence that plaintiff relied on any statements to his detriment, as there is no evidence that he made any payments on the student loans.  Finally, the Court notes again that Betty Deatherage is not a plaintiff in this lawsuit.

**IT IS THEREFORE ORDERED BY THE COURT** that Sallie Mae's Motion for Judgment as a Matter of Law (Doc. 74) on plaintiff's FDCPA claim is GRANTED;

**IT IS FURTHER ORDERED** that Sallie Mae's oral motion for judgment as a matter of law on plaintiff's KCPA claims of deceptive acts and practices is GRANTED;

**IT IS FURTHER ORDERED** that judgment is entered in favor of Sallie Mae on plaintiff's KCPA claims of unconscionable acts and practices.

IT IS SO ORDERED.

Dated:  March 25, 2009

 S/ Julie A. Robinson
 JULIE A. ROBINSON
 UNITED STATES DISTRICT JUDGE